

March 3, 2021

**By ECF**

The Honorable Victor Marrero
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   *Life Insurance Fund Elite LLC v. Hamburg Commercial Bank AG*,
       Civil Action No. 1:20-cv-08553

Dear Judge Marrero:

      Plaintiff Life Insurance Fund Elite LLC ("LIFE") submits this letter in response to the February 3, 2021, letter of Defendant Hamburg Commercial Bank AG ("HCOB"). HCOB fails to identify any grounds for dismissing any of LIFE's claims.[1] HCOB's letter amounts to an assertion that a secured creditor can ignore the requests of an interested party for details about the sale of the party's own collateral, well the collateral at an unreasonably low price, and then hide the results of that sale from the owner of the collateral (and this Court). This proposition is contrary to both the law and common sense.

      A.   LIFE Has Stated a Claim for Breach of Commercial Reasonableness

      New York courts weigh commercial reasonableness under the UCC by assessing whether the secured party "acted in good faith and to the parties' mutual best advantage." *108th St. Corp. v Overseas Commodities*, 238 A.D.2d 324, 325 (2d Dep't 1997). "Good Faith" is defined as "honesty in fact in the transaction or conduct concerned." UCC § 1–201[20]. A bad-faith action is one that "directly violate[s] an obligation that falls within [a party's] reasonable expectations." *Bank of China v. Chan*, 937 F.2d 780, 789 (2d Cir. 1991).

      In effect exploiting its decision to hide the results of its sale of LIFE's property as a basis for a motion to dismiss, HCOB overlooks that it necessarily took a commercially unreasonable action. That is, HCOB either (i) sold LIFE's collateral for less than the amount of the outstanding loan, which, in light of the collateral's value and HCOB's efforts to market the asset, amounts to an unreasonably low price; or (ii) sold the collateral for more than the outstanding loan and now refuses to turn over those sales proceeds to LIFE. In either event, HCOB's decision to conceal the results of the sale itself amounts to commercial unreasonableness. *See Highland CDO*

---

[1] HCOB asserts that there are issues with diversity jurisdiction but offers no facts or arguments in support of that claim. LIFE has properly plead jurisdiction, and HCOB has been served pursuant to the Hague Convention.

*Opportunity Master Fund, L.P. v. Citibank, N.A.*, 2013 WL 1191895, at *10-11 (S.D.N.Y. Mar. 22, 2013) (complaint alleging that defendant failed to provide accounting, what amount of the plaintiff's collateral it sold, and at what price stated claim under Article 9 of the UCC for failure to sell collateral in a commercially reasonable fashion).

Contrary to HCOB's assertion that LIFE has made only "bare allegations" in a "conclusory fashion," LIFE has alleged the following specific facts—and has done against the backdrop, as the official comments to UCC § 9-610 make plain, that a low price fetched for collateral following a sale renders the sale subject to judicial scrutiny. *See, e.g.*, *Tap Holdings, LLC v Orix Fin. Corp.,* 5 N.Y.S.3d 330 (N.Y. Sup. Ct. 2014).

- The collateral had a market value well in excess of the outstanding loan balance, and any sale for less than the loan balance was unreasonably low. SAC ¶¶ 26, 44.
- LIFE expressed an interest in purchasing the collateral as early as May 2019 and did so again in September and October 2019, before the collateral was purportedly sold on October 4, 2019. *Id*. ¶¶ 30-40.[2]
- HCOB refused to provide LIFE with information it needed to bid and refused to provide any details regarding the timing and manner of sale, let alone sufficient information for any potential purchaser to make an informed bid. *Id*. ¶ 41.
- HCOB marketed the collateral only to the ultimate purchaser. *Id*. ¶ 50.
- If HCOB had provided LIFE with the information it requested, LIFE stood ready, willing, and able to purchase the collateral for the loan balance *Id*. ¶¶ 2, 44.
- HCOB has refused to provide any details about the sale, including to whom the collateral was sold and for how much. *Id*. ¶ 43.

Under UCC § 9-610(b), "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." A sale is commercially reasonable if it is a "disposition in any recognizable market," is "otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition," or is approved in a judicial proceeding, by a bona fide creditor's committee, by a representative of creditors or by an assignee for the benefit of creditors. UCC § 9-627(b), (c). HCOB does not appear to dispute a central and undeniable feature of LIFE's claim: reasonable commercial practices require secured creditors to notify parties who have expressed an interest in purchasing the collateral of a potential sale.

Instead, HCOB's letter focuses on LIFE's waiver of its rights to notice under the terms of the parties' January 23, 2012, standstill agreement. But HCOB ignores LIFE's contention that its expression of an interest in purchasing the collateral triggered an obligation for HCOB to notify it of the sale, regardless of the terms of the standstill agreement. This is because HCOB (i) had a non-waivable duty to act commercially reasonably, and (ii) that duty included an obligation to act in the parties' mutual best interest. *See* UCC § 9-602. Ensuring that parties who express an interest in the collateral are provided with proper notice of the sale—even if that party is the owner—was an obligation HCOB had, and its duty could not be waived.

---

[2] HCOB claims that LIFE did not express an interest in bidding until after the collateral was sold, but LIFE expressly alleges otherwise.

2

Indeed, Article 9 of the UCC contemplates that secured parties such as HCOB are required to report the results of the sale of collateral to its owner. This unsurprising tenet is embodied, for example, in § 9-617(c)(1), which provides that if the transferee of the collateral has not obtained the property in good faith, then it takes the property "subject to the debtor's rights in the collateral." A debtor can scrutinize the transfer only if it is advised by the secured creditor of the details regarding the collateral's disposition.

B.  LIFE Has Stated a Claim for Breach of the Implied Covenant of Good Faith

HCOB's letter fails to recognize that LIFE's claim for breach of the implied covenant is based not on a contractual obligation to give notice, but on the incorporation of the UCC standards into the parties' agreement. And while the UCC provides HCOB with discretion in disposing of the collateral, HCOB was still bound by the covenant of good faith and fair dealing in exercising that discretion. *See Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389-90 (1995). A claim for breach of the implied covenant cannot conflict with an express contract provision, but HCO fails to properly frame the contract provision. That is, the standstill agreement contains a waiver of notice, but it does not (and cannot) contain a waiver of the obligation to act commercially reasonably. In the context of LIFE's expression of a desire to bid on the collateral, this obligation includes providing the requisite notice. Moreover, the claim for breach of the implied covenant extends to HCOB's ongoing failure to provide details of the results of the sale: LIFE does not know what happened to its property; HCOB's refusal to provide that information constitutes a breach of the implied covenant.

C.  LIFE Has Stated a Claim for Negligence

New York law recognizes that "[a] legal duty independent of contractual obligations may be imposed by law as an incident to the parties' relationship and that several types of defendants—including professionals—can be held liable in tort for failure to exercise reasonable care." *Dormitory Auth v. Samson Constr. Co.*, 30 N.Y.3d 704, 711-12 (2018). This is precisely the duty, relationship, and conduct that LIFE alleges.

Respectfully,

*/s/ Edward Normand*

Edward Normand

cc:   Patrick Dolan
      Timothy Cornell