USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/28/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
LIFE INSURANCE FUND ELITE LLC,          :
                                        :
                Plaintiff,              :
                                        :       20 Civ. 8553 (VM)
        - against -                     :
                                        :
HAMBURG COMMERCIAL BANK AG,             :       **DECISION AND ORDER**
                                        :
                Defendant.              :
-----------------------------------X

**VICTOR MARRERO, United States District Judge.**

Plaintiff Life Insurance Fund Elite LLC (the "Fund") brings this action against Hamburg Commercial Bank AG ("HCB") alleging breach of the duty of commercial reasonableness, breach of the implied covenant of good faith and fair dealing, and negligence stemming from HCB's allegedly unlawful disposition of collateral in which the Fund retained an ownership interest. (See Second Amended Complaint ("SAC"), Dkt No. 13.)

Now before the Court is HCB's premotion letter for dismissal of the Complaint (see "Motion," Dkt. No. 17), which the Court construes as a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").[1] After consideration of the parties'

---

[1] See Kapitalforeningen Lægernes Invest. v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (affirming the district court ruling deeming an exchange of letters as a motion to dismiss).

1

correspondence as set forth below, (see infra Section I, B), HCB's Motion is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

A. FACTUAL BACKGROUND[2]

The Fund was created in August 2007 through an agreement by its three members, ISM Advisors, LLC ("ISM"), Swiss Re Financial Products Corp. ("Swiss Re"), and Orix Capital Markets, LLC ("Orix"). ISM was the managing partner at founding. The Fund was founded with the purpose of investing in life-insurance-linked investment products, principally life-settlement products. The founding three members each agreed to contribute $180 million to the Fund over a ten-year capital commitment.

Shortly after creation, the Fund sought additional funding in the form of a loan from HSH Nordbank AG ("HSH"), which later became HCB in 2019. HSH loaned money to the Fund pursuant to a Loan and Security Agreement ("LSA"), which effectively made $1 in loan proceeds available for every $1 the Fund's members contributed in capital, with a maximum

---

[2] The factual background below, except as otherwise noted, derives from the SAC and the facts pleaded therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss. See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 180 (2d Cir. 2008) (citing GICC Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 465 (2d Cir. 1995)); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). Except when specifically quoted, no further citation will be made to the SAC or the documents referred to therein.

2

loaned amount of $150 million. Amendments to the LSA were executed on May 2, 2008 ("LSA-1"); October 7, 2010 ("LSA-2"); and July 14, 2011 ("LSA-3").

In 2008, prompted by major losses as a result of the global financial crisis, HSH began to signal its desire to exit from its funding commitment. Orix and Swiss Re similarly wished to exit the Fund. After discussions among the parties to facilitate an amicable exit from the fund failed, a protracted legal dispute ensued. As a result of these disputes, an individual named Zoran Fotak ("Fotak") came to control the entirety of the Fund, both directly and indirectly through various entities he controlled.

Because of the liquidity squeeze prompted by the 2008 financial crisis, the Fund sought new investors and to refinance any debt owed to HSH. The Fund required capital to continue to make premium payments to holders of life-insurance policies or else risk the value of those policies falling to zero. To ease its financial burden, the Fund negotiated a Standstill Agreement with HSH, executed on January 23, 2013, that temporarily paused payments due to HSH. In exchange, the Standstill Agreement allowed HSH to take control of the collateral (the individual policies) in the event of default or failure to refinance.

3

On February 1, 2013, such an event of default occurred, and the Fund voluntarily released the collateral to HSH. The Fund alleges that the Standstill Agreement granted HSH the right to take possession and dispose of the collateral but did not transfer title to HSH. Further, the Fund alleges that the Standstill Agreement did not modify HSH's duty to dispose of the collateral in a commercially reasonable manner. This term was key to the Fund, as the Fund believed the value of the collateral (~$148 million) significantly outpaced the amount still owed to HSH (~$55 million).

Over the next six years, HSH delivered quarterly collateral reports and loan statements to the Fund. These statements each reflected an outstanding loan balance. The Fund alleges that the combination of an outstanding loan balance and HSH's delivery of the reports confirms the parties' mutual understanding that the Fund retained title to the collateral.

On May 30, 2019, after HSH was bought out by Cerberus Capital Management LP ("Cerberus") and changed its name to HCB, Fotak was contacted by lawyers indicating that they were working on the sale of the collateral. After some back and forth, on October 1, 2019, the lawyers confirmed they were working on behalf of HCB and Cerberus. Upon receiving this information, Fotak indicated that the Fund would like to bid

on the collateral and asked for various items of information. On October 2, 2019, HCB sent Fotak only the third-quarter collateral and cash statements. HCB did not provide Fotak with any additional information, including much of the information Fotak requested.

On October 2, 2019, Fotak made clear to the lawyers negotiating the transaction on behalf of HCB that he believed the collateral was worth more than the outstanding loan balance. On October 8, 2019, Fotak again indicated he was prepared to bid and requested additional information. On October 10, 2019, Fotak was informed that the collateral had been sold on October 4, 2019. The sale of the collateral did not cover the face value of the loan balance and thus the Fund remains in debt to HCB. As of August 20, 2020, the Fund had received no additional information about the sale of the collateral. The Fund alleges that, had the collateral been diligently marketed, it would have sold for amounts in excess of the loan balance, which would have been paid in full, and the Fund would have been entitled to the excess.

B.  PROCEDURAL BACKGROUND

Following this sequence of events, on October 14, 2020, the Fund filed the instant suit against HCB, bringing claims of breach of the duty of commercial reasonableness, breach of the implied covenant of good faith and fair dealing, and

negligence. (See Dkt. No. 1.) The Fund filed an amended complaint on December 11, 2020. (See Dkt. No. 11.) The Fund filed the SAC on December 28, 2020. (See Dkt. No. 13.)

Pursuant to the Court's Individual Practices, HCB notified the Fund of its intention to move to dismiss the SAC based on alleged deficiencies contained therein by letter dated January 22, 2021. (See Dkt. No. 15). The Fund responded by letter dated February 3, 2021. (See Dkt. No. 17.) HCB subsequently moved the Court for a premotion conference to obtain guidance on its anticipated motion to dismiss the SAC. (See Motion.)

The Court declined to hold a conference but allowed both parties to submit further letters detailing their positions on HCB's motion to dismiss. (See Dkt. No. 18.) The Fund filed an opposition to the Motion on January 14, 2021. (See "Opposition," Dkt. No. 24.) HCB replied on March 8, 2021. (See "Reply," Dkt. No. 25.) And finally, the Fund filed a sur-reply as directed by the Court on March 10, 2021. (See "Sur-reply," Dkt. No. 26.) The Court has considered each of these submissions in connection with this Decision and Order.

C. THE PARTIES' ARGUMENTS

HCB argues that the SAC should be dismissed because (1) the Fund's claim for breach of the duty of commercial reasonableness fails because Plaintiff has not alleged facts

6

demonstrating the collateral sale transaction here was unreasonable; (2) the claim for breach of the implied duty of good faith and fair dealing fails because Plaintiff expressly waived the rights it now seeks to enforce; and (3) the negligence claim should be dismissed as wholly duplicative of the breach-of-commercial-reasonableness claim.

The Fund responds that (1) it has pled sufficient facts regarding the collateral sale transaction and result to sustain its breach-of-commercial-reasonableness claim and that any additional facts are uniquely in Defendant's possession; (2) the implied-duty-of-good-faith claim survives because the parties incorporated Uniform Commercial Code ("UCC") standards into their agreements; and (3) the negligence claim survives because it alleged an independent duty to exercise reasonable care beyond that involved in the parties' contractual relationship.

## II.  **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

7

for the misconduct alleged." Id. A complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible. See id. However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief about the speculative level." Twombly, 550 U.S. at 555.

In resolving a motion to dismiss, the Court's task is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks omitted), aff'd sub nom. Tenney v. Credit Suisse First Bos. Corp., No. 05 Civ. 3430, 2006 WL 1423785 (2d Cir. May 19, 2006). In this context, the Court must draw reasonable inferences in favor of the nonmoving party. See Chambers v. TimeWarner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, the requirement that a court accept the factual allegations in the complaint as true does not extend to legal conclusions. See Iqbal, 556 U.S. at 678.

### III. DISCUSSION

After reviewing the parties' submissions, the Court grants the Motion in part and denies it in part. The Court is persuaded that the Fund's breach-of-commercial-

reasonableness claim is adequately pled. However, the Court will dismiss the claims for breach of the implied covenant of good faith and fair dealing and negligence.

A.  BREACH OF COMMERCIAL REASONABLENESS

Under Article 9 of the UCC, a secured party must dispose of collateral via commercially reasonable methods. See U.C.C. § 9-610. "Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." Id. § 9-610(b). "[Q]uestions of commercial reasonableness are necessarily fact intensive." Highland CDO Opp. Master Fund, L.P. v. Citibank, N.A., No. 12 Civ. 2827, 2013 WL 1191895, at *11 (S.D.N.Y. Mar. 22, 2013); see also MY Imagination, LLC v. M.Z. Berger & Co., 726 F. App'x 272, 275 (6th Cir. 2018) ("Under New York law, whether a party has used reasonable efforts is almost always, as here, a question of fact.").

Here, the Court is persuaded that the Fund has adequately pled its breach-of-commercial-reasonableness claim. Plaintiff alleges a number of facts, most notably the value of collateral compared to the apparent sale price and the lack of notice to interested parties, that support a plausible claim that the sale was not commercially reasonable. (See SAC ¶¶ 26, 30-40, 44, 50.) While HCB disputes whether these allegations are in fact true, the Court concludes that it

9

would not be appropriate to resolve this dispute at this stage of the litigation. See Seomi v. Sotheby's, Inc., 910 N.Y.S.2d 765 (Table), at *3 n.3 (N.Y. Sup. Ct. 2010).

HCB's principal argument in response is that the Fund waived its rights regarding the disposition of the collateral, and specifically waived its rights to receive notice of the collateral sale, when the parties executed the Standstill Agreement. (See Motion at 1.) But the Fund's claim is not one for breach of the Standstill Agreement (or any other agreement between the parties) predicated upon the lack of notice of sale. Rather, the Fund's claim centers on the process of disposing the collateral and the result of that sale -- allegations unrelated to any obligation to give notice to the Fund regarding the sale.

The allegations regarding the sale price and marketing of the collateral are sufficient at this stage to make out a plausible claim for breach of commercial reasonableness. Because the Court is persuaded that the Fund's allegations raise a plausible claim for breach of commercial reasonableness, the Court will deny HCB's motion to dismiss this claim.

B.  IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Next, HCB argues that the Court should dismiss the Fund's claim for breach of the implied covenant of good faith and

fair dealing as duplicative of its commercial-unreasonableness claim and precluded by the express contract between the parties. (See Motion at 2.) The Court agrees.

The Fund essentially argues the viability of its implied-covenant claim in one of two ways. First, the Fund argues that "while the UCC provides [HCB]with discretion in disposing of the collateral, [HCB] was still bound by the covenant of good faith and fair dealing in exercising that discretion." (Opposition at 3.) But this response merely amounts to a restatement of the Fund's breach-of-commercial-reasonableness claim. And when a claim for breach of the implied covenant of good faith and fair dealing constitutes a restatement of a claim for breach of contract, the breach-of-the-implied-duty claim is properly dismissed. See Fleisher v. Phoenix Life Ins. Co., 858 F. Supp. 2d 290, 299 (S.D.N.Y. 2012) ("New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled.").

Second, the Fund seems to argue that the lack of notice regarding the sale violates the implied covenant. But, as HCB persuasively argues, this this point either simply further restates HCB's duty to act commercially reasonably or is precluded by the express waiver of notice contained in the

11

Standstill Agreement. As a result, reliance on lack of notice cannot save the Fund's claim. See Mariah Re Ltd. v. Am. Family Mut. Ins. Co., 52 F. Supp. 3d 601, 619 (S.D.N.Y. 2014). Accordingly, the Court will grant HCB's motion with respect to the breach of the implied covenant of good faith and fair dealing and dismiss the claim.

C. NEGLIGENCE

Finally, HCB argues that the Fund's negligence claim is similarly duplicative of the breach-of-commercial-reasonableness claim. Here again, the Court agrees.

"It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." Clark-Fitzpatrick, Inc. v Long Island R.R. Co., 70 N.Y.2d 382, 389 (1987). Thus, if the claims presented are "clearly within the contemplation of the written agreement . . . [m]erely charging a breach of a 'duty of due care,' employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim." Id. at 390. In New York, a "breach of the duty of commercial reasonableness is a breach of contract claim." Beninati v. F.D.I.C., 55 F. Supp. 2d 141, 147 (E.D.N.Y. 1999).

Here, the Fund's negligence claim is based on the exact same facts as the commercial-reasonableness claim and centers

on the exact same duty to act in a commercially reasonable manner. The Fund points to no independent legal duty that HCB allegedly violated. The negligence claim is therefore duplicative of the Fund's commercial-reasonableness claim and properly dismissed.

The Fund does not appear to seriously dispute this point, but rather argues that "New York law recognizes that '[a] legal duty independent of contractual obligations may be imposed by law as an incident to the parties' relationship and that several types of defendants—including professionals—can be held liable in tort for failure to exercise reasonable care.'" (Opposition at 3 (quoting Dormitory Auth v. Samson Constr. Co., 30 N.Y.3d 704, 711-12 (2018)). But this independent duty attaches only when the defendant "perform[s] a service affected with a significant public interest [and when the] failure to perform the service carefully and competently can have catastrophic consequences." Sommer v. Fed. Signal Corp., 79 N.Y.2d 540, 551 (1992). The duty does not lie when, as here, "plaintiff is essentially seeking enforcement of the bargain." Id. at 552. In those cases, "the action should proceed under a contract theory." Id. Accordingly, the Court will grant HCB's motion with respect to the Fund's negligence claim.

**IV. ORDER**

For the reasons stated above, it is hereby

**ORDERED** that the motion so deemed by the Court as filed by defendant Hamburg Commercial Bank AG pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint of plaintiff Life Insurance Fund Elite LLC (see Dkt. No. 17) is **GRANTED IN PART** and **DENIED IN PART** as set forth above. In particular, Counts II and III are **DISMISSED** without prejudice, but Count I remains in the action.

**SO ORDERED.**

Dated: New York, New York
     28 June 2021

_____
Victor Marrero
U.S.D.J.